# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 37
Suzan Russell,
     Appellant,
    v.
New York University, et al.,
     Respondents.

Avram S. Turkel, for appellant.
Joseph C. O'Keefe, for respondents New York University, et al.
David M. Alberts, for respondents Joseph M. Thometz et al.

GARCIA, J.:

Plaintiff was subjected to offensive and demeaning conduct by her colleagues and sued them and her employer in federal court alleging violations of various federal, New York State, and New York City statutes, and intentional infliction of emotional distress. The parties engaged in the full discovery process, including depositions and document production, and defendants moved for summary judgment. A federal judge made detailed

- 1 -

factual findings and applied those findings to defendants' federal claims, ultimately granting defendants' summary judgment motions, and the United States Court of Appeals for the Second Circuit affirmed. Plaintiff brought a nearly identical suit in Supreme Court, raising claims over which the federal district court declined to exercise supplemental jurisdiction. Supreme Court dismissed plaintiff's complaint as barred by collateral estoppel and for failing to state a claim, the Appellate Division agreed, and we now affirm.

I.

For several months, plaintiff, an adjunct professor at NYU, received unsolicited, offensive mail to her NYU mailbox and email account that targeted her based on her age, religion, gender identity, and sexual orientation. She was also the victim of online impersonation, with offensive comments posted in her name on various websites. She reported this conduct to various individuals and employment offices at NYU and the incidents were thoroughly investigated, the offenders sought, and measures taken to limit the harmful impact of the conduct on plaintiff. Dissatisfied with NYU's response, plaintiff elected to file suit in the United States District Court for the Southern District of New York against NYU and certain administrators (collectively, NYU), as well as the individuals she claimed were responsible for the conduct against her (the individual defendants), alleging discrimination, hostile work environment, and retaliation under various federal statutes, the New York State Human Rights Law (the State HRL), and the New York City Human Rights Law (the City HRL), as well as a claim for intentional infliction of emotional distress (IIED).

A court-annexed mediation between the parties was unsuccessful, and the parties proceeded to discovery, entering into a standard confidentiality agreement before exchanging documents and conducting depositions. After receiving discovery materials designated confidential, plaintiff contacted an NYU professor identified by defendants as a potential witness and sent her a series of hostile and threatening emails. Despite receiving a cease-and-desist letter from NYU's counsel, plaintiff continued to send disturbing emails to the potential witness. Several days later, plaintiff received a letter advising her that her NYU employment was terminated because she "was engaged in harassing, intimidating, and threatening a faculty member" and was "in violation of a court directive."

Plaintiff's union filed a grievance challenging her termination. An arbitrator later determined that plaintiff had engaged in misconduct that justified "some discipline," that it was a "serious issue that required a serious response," but that the conduct "did not rise to the level that would justify immediate termination." The arbitrator awarded plaintiff back pay but did not award reinstatement. Plaintiff amended her complaint to allege retaliation based on her termination, claiming that she was fired for refusing to settle during the mediation.

At the close of discovery, NYU and the individual defendants moved for summary judgment. In a thorough opinion with extensive factfinding, the district court granted defendants' motions (*Russell v New York Univ.*, 2017 WL 3049534, * 31-38 [SD NY, July 17, 2017, No. 15 Civ. 2185 (GHW)]). In short, the district court rejected plaintiff's hostile work environment claim because "no reasonable jury could find that NYU responded negligently here," and plaintiff's discrimination and retaliation claims because plaintiff

presented no evidence that her termination occurred under circumstances giving rise to an inference of discrimination, no evidence of a causal connection between her termination and any protected activity, no evidence that her termination was a pretext for discrimination, and no evidence of any retaliatory motive for her termination (2017 WL 3049536, *31-36). The district court declined to exercise supplemental jurisdiction over plaintiff's City and State HRL claims and dismissed those claims without prejudice (*id.* at *39-40). Plaintiff appealed the dismissal of her hostile work environment and retaliation claims and the Second Circuit affirmed (739 Fed Appx 28 [2d Cir 2018]).

While her appeal was pending, plaintiff filed this action in Supreme Court, Bronx County, alleging violations of the State and City HRLs, renewing her IIED claim, adding another NYU administrator as a defendant, and asserting a new protected category of disability. Defendants moved to dismiss the complaint as barred by collateral estoppel and for failure to state a claim, and Supreme Court granted these motions (2020 NY Slip Op 35215[U], *17 [Sup Ct, Bronx County 2020]). The court dismissed the discrimination claims against the NYU defendants, on the basis that the federal district court found "that the NYU defendants exhaustively investigated the harassment by the individual defendants, that the NYU defendants were not [] aware of and did not participate in the harassment, [and] that they took reasonable action to address the claims" (*id.* at *11). Next, the court dismissed the retaliation claims against NYU, reasoning that "under the more liberal analysis of the City Human Rights Law," "no basis exists for a finding that unlawful discrimination was the basis for an adverse employment action" based on the "factual findings of the federal court [that] make clear that no pretext or retaliatory animus existed

for the termination of plaintiff's employment" (2020 NY Slip Op 35215[U], *13-15). Plaintiff's claims against the individual defendants were also dismissed, with the court holding that the district court's findings that the individual defendants had no supervisory role over plaintiff precluded any claim under the relevant statutes because "co-workers who engage in discriminatory conduct who have no role in supervision or terms of employment are not liable under the NYCHRL or the NYSHRL" (id. at *16). Derivative aiding and abetting claims against the individual defendants did not survive because the primary claims against NYU were dismissed (id.).

The Appellate Division affirmed, with the full panel agreeing that plaintiff was collaterally estopped from proceeding on her discrimination and hostile work environment claims and that the individual defendants could not be held liable under the City HRL in the absence of any supervisory authority (204 AD3d 577, 579, 593 [1st Dept 2022]). While the majority held that plaintiff was collaterally estopped from proceeding on her retaliation claim by the federal court's finding "that plaintiff failed to present evidence that NYU's reason [for plaintiff's termination] was pretextual" (id. at 579-580), the dissent would have held that "[t]he temporal proximity between plaintiff's refusal to settle her discrimination claims and her termination some five weeks later supports an inference that she was terminated in retaliation for refusing to settle and continuing to prosecute her discrimination claims," "buttressed by the arbitrator's finding that her termination was an unduly harsh remedy for her conduct" (id. at 588). Plaintiff's appeal comes to this Court as of right pursuant to CPLR 5601 (a).

II.

The courts below properly applied our established principles of collateral estoppel in the context of the unique requirements of the City Human Rights Law. Collateral estoppel "bars the relitigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment" and so "the determination of an essential issue is binding in a subsequent action, even if it recurs in the context of a different claim" (*Paramount Pictures Corp. v Allianz Risk Transfer AG*, 31 NY3d 64, 72 [2018] [internal citations and quotation marks omitted]). If there is identity of issues between the prior determination and the instant litigation, and the precluded party had a full and fair opportunity to contest the prior determination, collateral estoppel applies and the prior determination is binding in the subsequent action (*see Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985]).

Courts in New York are not infrequently called upon to apply these principles in cases where plaintiffs have initially sought to have their rights vindicated in federal court, particularly in the employment context. After federal courts in those cases have supervised extensive discovery, made findings of fact and liability determinations adverse to plaintiffs, granted summary judgment on the federal claims, and declined to exercise supplemental jurisdiction over claims brought under the City and State HRLs, plaintiffs may opt to pursue these claims in state courts (*see e.g. Johnson v IAC/InterActive Corp.*, 179 AD3d 551, 552 [1st Dept 2020] [collateral estoppel applied to preclude plaintiff's claims under the "more liberal analysis" of City HRL following district court's grant of summary judgment to defendants]; *Williams v NYC Transit Auth.*, 171 AD3d 990, 992-993 [2d Dept 2019] [same]; *Milione v City University of NY*, 153 AD3d 807, 808-809 [2d Dept 2017]

[same]; *Simmons-Grant v Quinn Emanuel Urquhart & Sullivan LLP*, 116 AD3d 134, 138-141 [1st Dept 2014] [same]).  Applying the doctrine of collateral estoppel as it was intended, these courts will dismiss complaints where the federal court determinations preclude a second litigation (*see id.*; *cf. Allen v McCurry*, 449 US 90, 95-96 [1980] ["collateral estoppel not only reduce(s) unnecessary litigation and foster(s) reliance on adjudication, but also promote(s) the comity between state and federal courts that has been recognized as a bulwark of the federal system"]; *Buechel v Bain*, 97 NY2d 295, 303 [2001] ["The policies underlying (collateral estoppel's) application are avoiding relitigation of a decided issue and the possibility of an inconsistent result"]).

The City HRL must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws . . . have been so construed" (Administrative Code of the City of NY § 8-130 [a]; *see Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]).  To that end, when considering the collateral estoppel effect of a federal district court ruling, our state courts must be, and have been, cognizant of this distinct analytical framework (*see e.g. Williams*, 171 AD3d at 993 ["(E)ven under the broader standard of the NYCHRL, (the federal factual) determinations nonetheless require dismissal of the plaintiff's causes of action"]; *Karimian v Time Equities, Inc.*, 164 AD3d 486, 488-489 [2d Dept 2018] ["(A) cause of action asserted pursuant to NYCHRL must be analyzed independently from similar or identical causes of action asserted pursuant to Title VII and/or NYSHRL"]; *Simmons-Grant*, 116 AD3d at 140 ["(T)he resolution of even a strictly factual issue could vary depending on the balancing process that shapes a court's view of one or more events,"

and the "balancing process demanded by title VII as it has been interpreted . . . and the City HRL as it has been amended by the Restoration Act . . . can easily yield different interpretations and, hence, different results"]). Nevertheless, as the Appellate Division correctly noted below, "it would be illogical to accept as true in the state action a factual allegation rejected by the federal court where plaintiff had a full and fair opportunity to litigate it in the federal action, as long as the same conclusion would result if the allegation were viewed under the more liberal City Human Rights Law standard" (204 AD3d at 579). Put another way, even under the City HRL, the "general principle [of liberal construction] does not substitute for evidence" and "once defendant [has] established its nonretaliatory reason in the federal action, plaintiff [is] required to identify an issue of fact" (*Simmons-Grant*, 116 AD3d at 141).

Lower courts have had no trouble applying collateral estoppel within this framework (*compare Kim v Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 AD3d 18, 23-24 [1st Dept 2014] [collateral estoppel did not apply to bar claims under City and State HRLs following federal court ruling on federal statutory claims because both the applicable standard and "claimed bases for retaliation" differed between the federal and state actions], *and Domingo v Avis Budget Group, Inc.*, 219 AD3d 964, 966 [2d Dept 2023] [dismissing retaliation claims as barred by collateral estoppel where factual determinations examined under Title VII and State HRL by federal court were "determinative of" retaliation claims asserted in state complaint under City HRL, but maintaining hostile work environment claim because plaintiff's allegations "could constitute 'more than petty slights and trivial inconveniences' (as required by the City HRL) without rising to the level of being severe

and pervasive (as required by Title VII and State HRL)"] *with Johnson*, 179 AD3d at 552 ["In applying collateral estoppel to such purely factual issues, the motion court properly evaluated plaintiff's claims of discrimination and disparate treatment under the more liberal analysis of the City Human Rights Law . . . and correctly concluded that plaintiff failed to raise a triable issue of discrimination based on the termination of her employment or any disparate treatment"]).  The courts below adhered to this approach and correctly concluded that plaintiff's claims are precluded based on the findings of the district court.

A.

In the federal litigation, the district court found that, because "no reasonable jury could find that NYU responded negligently here," plaintiff's hostile work environment claim failed, and that because plaintiff "failed to present any evidence from which a reasonable jury could draw an inference of discrimination," her discrimination claim failed (2017 WL 3059534, *31, 33).  With respect to defendant's retaliation claim, the district court held that plaintiff presented "no evidence that NYU's stated reason for her termination was merely a pretext for discrimination," no evidence "that her termination occurred under circumstances giving rise to an inference of discrimination," no "circumstances giving rise to an inference that she was terminated because of her sex, age, or religion," and no "evidence of a causal connection between her termination and any protected activity" (*id.* at *32-35).  Rejecting plaintiff's assertion that the arbitrator's finding that plaintiff's misconduct did not "rise to the level that would justify immediate termination" supported an inference that her termination was retaliatory, the district court instead held that, because the arbitrator concluded that plaintiff committed serious

misconduct requiring a serious response and "did not find that NYU's termination of [plaintiff] was motivated by any discriminatory animus or anything else other than its judgment as to [plaintiff's] misconduct," the arbitrator's conclusion "does not support an inference that [plaintiff] was terminated for discriminatory reasons" (*id.* at * 33). The district court also determined, with respect to NYU's assertion that plaintiff's termination was due to her harassing emails to a fellow professor and potential witness, that plaintiff failed "to present evidence from which a reasonable jury could conclude that NYU's explanation was a pretext for impermissible retaliation" (*id.* *36). With respect to plaintiff's "reli[ance] . . . on the alleged temporal proximity between the court-ordered mediation held in this lawsuit and her termination," the court explained that, if considered, evidence of such temporal proximity would be insufficient to counter the finding that NYU's explanation for plaintiff's termination was not pretextual (*id.* at *37).

Where a federal court has made an "explicit finding that plaintiff produced *no* evidence on the relevant specific factual issue in the litigation," as was done here, the application of the collateral estoppel bar to plaintiff's identical claims under state statutes is warranted (*Simmons-Grant*, 116 AD3d at 140). With no factual findings to sustain a discrimination or retaliation claim no matter the standard, plaintiff's claims must be dismissed.[1] Application of the requisite liberal construction standard does not change the

---

[1] The dissent below suggested that the federal courts determined that "any causal inference would be too weak to rebut the facially nondiscriminatory reason proffered by defendants for plaintiff's termination" (204 AD3d at 591 [Gonzalez, J., dissenting]). The federal courts instead held that there was *no* evidence upon which any such causal inference could be based (2017 WL 3049534, *32-36).

result, and this case does not implicate "the frequent risk that evidence winds up being undervalued for City HRL purposes because it has been filtered through a [federal] lens" (*id.*). Instead, applying the proper mixed-motive standard under the City HRL, Supreme Court correctly determined that plaintiff could not proceed on her claims where "[t]he factual findings of the federal courts make clear that *no* pretext or retaliatory animus existed for the termination of plaintiff's employment" (2020 NY Slip Op 35215[U], *15 [emphasis added]). Plaintiff's claims against NYU were thus barred by collateral estoppel.

### B.

Plaintiff 's claims against the individual defendants were also properly dismissed.[2] Plaintiff argues that these individuals, both NYU faculty members at the time of the conduct, are liable as supervisors, that they aided and abetted NYU's violations, and that, even assuming they held no supervisory role, they can be found personally liable for their own harassing conduct under the City HRL. These claims all fail.

The district court noted that it was "undisputed" that the individual defendants were plaintiff's "co-workers rather than her supervisors" (2017 WL 3049534, *28). This finding precludes any determination to the contrary in this litigation, and so plaintiff's first theory of liability based on any alleged supervisory role must be rejected. With respect to aiding and abetting liability (*see* Administrative Code § 8-107 [6]), there can be no such liability given that the predicate claims against NYU were properly dismissed (*see Abe v Cohen*,

---

[2] Likewise, plaintiff's claims against individual NYU administrators and plaintiff's IIED claim against the individual defendants were properly dismissed for failure to state a claim.

115 AD3d 491, 492 [1st Dept 2014]; *Palmer v Cook*, 65 Misc 3d 374, 392 [Sup Ct, Queens County 2019] ["A pre-condition to proving aiding and abetting pursuant to the NYSHRL and NYCHRL is a finding of discrimination"]).

We also reject plaintiff's claim that the individual defendants may be liable under the City HRL absent any supervisory role. While that statute goes beyond the State HRL in providing for individual liability, it does not, as written, permit coworkers to be held liable absent a role in administering the compensation, terms, conditions, or privileges of plaintiff's employment.

Federal, state, and local employment statutes hold employers liable for discriminatory conduct (*see e.g.* 42 USC § 2000e-2 [Title VII]; 29 USC § 623 [ADEA]; Executive Law § 296 [1] [State HRL]; Administrative Code § 8-106 [1] [City HRL]). Employers are thus required to provide reasonable avenues for discrimination and harassment complaints, to respond appropriately to such complaints, and to take reasonable steps to eliminate the harmful conduct; where they fail to do so, they are subject to liability under these statutes (*see Zakrzewska v New School*, 14 NY3d 469, 479-480 [2010]; *Williams v New York City Housing Auth.*, 61 AD3d 62, 73-80 [1st Dept 2009]; *see also Rojas v Roman Catholic Diocese of Rochester*, 660 F3d 98, 107 [2d Cir 2011]; *Terry v Ashcroft*, 336 F3d 128, 148 [2d Cir 2003]). Unlike other statutes, however, the City HRL expressly provides for liability at the individual employee level, making it "an unlawful discriminatory practice . . . [f]or an employer *or an employee or agent thereof*, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual

orientation, uniformed service, height, weight, or immigration or citizenship status of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment" (Administrative Code § 8-107 [1] [a] [3] [emphasis added]; NYC Legislative Annual 145-81 [1991]).  The language providing for liability of "an employee or agent" was added to the statute in 1991 (Local Law No. 39 [1991] of City of NY § 1).[3]

We agree with the lower courts that have held that the statutory language, textually limited as it is to discrimination in pay, terms, conditions, and privileges of employment, provides for liability for individual employees for discrimination when those employees have some supervisory role over the victim of their discrimination (*see e.g. Priore v New York Yankees*, 307 AD2d 67, 74 [1st Dept 2003] [City HRL limits liability to fellow employees who "act with or on behalf of the employer in hiring, firing, paying, or in administering the 'terms, conditions or privileges of employment'—in other words, in some agency or supervisory capacity"]).  As required by the statute's liberal rule of construction, we construe this language broadly, to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment (*see e.g. Melendez v NYC Transit Auth.*, 204 AD3d 542, 543 [1st

---

[3] In comparison, the State HRL does not expressly address discrimination directly committed by an employee (*see* Executive Law § 296 [1] [prohibiting discrimination only by an "employer"]; § 296 [6] [prohibiting "any person" from aiding and abetting discrimination]; *see also Patrowich v Chemical Bank*, 63 NY2d 541, 542-543 [1984]).

Dept 2022] [evidence that defendant "had the de facto ability to direct other employees, notwithstanding his official title" precluded summary judgment on City HRL claim]).

Today we simply affirm the First Department's approach that began more than twenty years ago with *Priore* and has been consistently applied through the Restoration Act, after *Williams*, and since the 2016 City HRL amendments.[4] No support is provided for the dissent's contrary approach. Indeed, in each of the cases cited by the dissent for the undisputed propositions that "state and federal courts have treated section 8-107 (1) (a) as creating individual liability for employees" and that "a person may sue an employee for allegedly creating or participating in a hostile work environment based on the complainant's protected classification" (*see* dissenting op at 9-10, 14-15), with the exception of *Murphy v ERA Realty* (251 AD2d 469, 471 [2d Dept 1998]), plaintiff either did not bring a claim based on individual liability (*see e.g. Springs v City of N.Y.*, 2019 WL 1429567, *15 n 4, *16 [SD NY Mar. 28, 2019, No. 17 Civ. 451 (AJN)] ["The Court is cognizant that Plaintiff has not brought a NYCHRL discrimination claim against any of the individual defendants"]; *Baldwin v Bank of America, NA,* 42 Misc 3d 1203[A], 2013 NY Slip Op 52194[U], *8 [Sup Ct, Kings County 2013] ["Plaintiff does not allege that defendant Perez is directly liable under City Human Rights (Law) § 8-107 (1) (a)"]), or

---

[4] While the dissent insists that the First Department "acknowledged" in *Williams* that *Priore* was overruled (dissenting op at 27), the First Department has continued to apply *Priore* (*id.* at 19-20), including the full panel below (204 AD3d at 579, 593). For this reason, as well as the other issues identified herein, we do not find the position advocated by "[a] drafter of both the 1991 and 2005 amendments" persuasive (*see* dissenting op at 19, 23, 24, 25, 26, citing Gurian, *A Return to Eyes on the Prize*, 33 Fordham Urb LJ 255 [2006]).

brought a claim against an individual with supervisory or managerial control over the plaintiff (*see Quintero v Angels of the World, Inc.*, 2021 WL 4464123, *10 [ED NY, Sep. 10, 2021, 19 Civ. 6126 (DG)] [individual defendant "harasser" managed operations of employer and controlled plaintiff's work schedule]; *Antoine v Brooklyn Maids 26, Inc.*, 489 F Supp 3d 68, 78 [ED NY 2020] [individual defendant "harasser" was the chief executive officer of plaintiff's employer and her supervisor]; *Setty v Synergy Fitness*, 2018 WL 8415414, *1 [ED NY Dec. 18, 2018, 17 Civ. 06504 (NGG/SMG)] [individual defendant "harasser" was plaintiff's former manager]; *Dillon v Ned Management, Inc.*, 85 F Supp 3d 639 [ED NY 2015] [individual defendants were plaintiff's boss, "immediate supervisor," the "owner of the company," and the "bookkeeper" with authority to dock plaintiff's pay]; *Baldwin*, 2013 NY Slip Op 52194[U], *2 [individual defendant was plaintiff's former supervisor]; *Malena v Victoria's Secret Direct, LLC*, 886 F Supp 2d 349, 366 [SD NY 2012] [individual defendant was plaintiff's direct boss "and hence supervised her schedule and conditions of employment" and "played a part in setting Plaintiff's salary"]; *Nelson v HSBC Bank USA*, 41 AD3d 445, 446 [2d Dept 2007] [individual defendants were plaintiffs' supervisors]). Of course, as explained, we agree with the dissent that section 8-107 (1) (a) creates individual liability for employees—but only those employees who, as in the above-cited cases, have a role in administering plaintiff's compensation, terms, conditions, or privileges of employment. [5]

---

[5] We decline to adopt the dissent's suggestion that the meaning of "conditions of employment" somehow changes when applied to gender-based harassment (*see* dissenting op at 14-15, 18). Sixteen protected characteristics upon which a claim for employee

But that is as far as the language of the statute will permit us to go (*see Makinen v City of NY*, 30 NY3d 81, 88 [2017] ["Even if the NYCHRL was intended to be more protective than the state and federal counterparts, and even if its legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation, the NYCHRL still must be interpreted based on its plain meaning"] [internal citations and quotation marks omitted]).   The text of the statute does not support unlimited liability for all co-workers, but instead ties that liability to the power to affect specified features of plaintiff's employment (*see e.g. Eustache v Board of Educ.*, 221 AD3d 452, 453 [1st Dept 2023] [claims under City HRL dismissed against coworker where plaintiff "failed to sufficiently allege that (defendant) had any authority over the terms, conditions, or privileges of his employment"]; *Kwong v City of N.Y.*, 204 AD3d 442, 445-446 [1st Dept 2022]; *Priore*, 307 AD2d at 74 ["There is no indication in the local ordinance, explicit or implicit, that it was intended to afford a separate right of action against any and all fellow employees based on their independent and unsanctioned contribution to a hostile environment"]).   For that reason, we decline to adopt the approach suggested by the Second Department in *Murphy*, which is unmoored from the text of the City HRL[6] (251 AD2d at 471 [paraphrasing the City HRL as generally prohibiting

---

liability may be based are listed in section 8-107 (1) (a) and there is nothing to suggest that gender, the sixth listed category, is to be treated differently.

[6] The dissent's reliance on dicta in federal cases analyzing the NYCHRL is misplaced and misapprehends the role of federal courts in applying New York law (*see* majority op at 9-10, 16-17 n 5).   First, many of the cited cases involved liability claims against individuals

"discriminatory employment practices" and failing to consider the scope of employee liability in the context of the statute's prohibition on discrimination in "compensation, . . . terms, conditions or privileges of employment"]).

We do not in any way minimize or downplay the offensive conduct attributed to the individual defendants. But avenues are available for holding those who engage in such behavior accountable; plaintiff unsuccessfully pursued those avenues in this litigation. Whether to make the far-reaching change in individual liability sought here—personal liability that would extend to subordinates as well as supervisors—is a question for the City Council, not this Court.

As always, we strive to construe a statute to effectuate legislative intent, using whatever interpretive tools are available, including the liberal construction we all agree is applicable to claims under the City HRL. We respectfully disagree with our dissenting colleague as to the result of that process here. And while the legislative branch is of course free to disagree with us and amend the statute, we do not share our dissenting colleague's

---

with authority to administer plaintiffs' compensation, terms, conditions, or privileges of employment, and accordingly those holdings are consistent with our opinion today (*see* dissenting op at 16-17 n 5 [citing exclusively federal cases involving claims against managers, supervisors, or owners]). To the extent some of those cases suggest a different rule, they rely, or follow cases that rely, as federal courts must, on existing state case law *(see United States v Fernandez-Antonia*, 278 F3d 150, 162 [2d Cir 2002] ["It is axiomatic . . . that when interpreting state statutes federal courts defer to state courts' interpretation of their own statutes"]). As discussed, the case law, particularly the Second Department's opinion in *Murphy*, has caused some confusion, which we clarify today in rejecting the approach taken by that court.

view that we need to be "reminded" (dissenting op at 2, 29) of what is, emphatically, the responsibility of this Court to determine what the law says.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (dissenting):

The New York City Human Rights Law ("NYCHRL") prohibits certain discriminatory conduct by "an employer, or an employee or an agent thereof" (Administrative Code of the City of NY § 8-107 [1] [a] [3]). This language could not be clearer: employees are individually liable for their discriminatory conduct, without

- 1 -

reservation. The language furthers the NYCHRL's animating policy to deter and eliminate all forms of discrimination. Despite the statute's clear text and antidiscrimination goals, the majority grafts onto the NYCHRL a nonexistent limitation on employee liability requiring the defendant to have a supervisory role, citing caselaw the City Council legislatively overruled years ago (*see* NYC Local Law 35 of 2016 ["LL35"], 2016 NYC Leg. Ann. 177, LMA at 18, codified as Administrative Code § 8-130 [c], ratifying *Williams v New York City Hous. Auth.*, 61 AD3d 62 [1st Dept 2009], thereby legislatively overruling *Priore v New York Yankees*, 307 AD2d 67 [2003]). The majority thus ignores the most elementary rule of statutory construction to give meaning to the legislative intent, here, the City Council's repeated mandate that the NYCHRL be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof" with "exceptions to and exemptions from" the statute "construed narrowly in order to maximize deterrence of discriminatory conduct" (Administrative Code § 8–130 [a], [b]).

The Council has twice amended the NYCHRL in response to this Court's overly narrow reading of the law. Now it will have to remind the judiciary for a third time that the Council means what it says.

## I.

Plaintiff, Suzan Russell, filed a complaint in federal court alleging that, while teaching as an adjunct professor in New York University's ("NYU's") Liberal Studies department, she was subjected to ongoing identity-based harassment via email and hard

copy mail from another professor, Joseph M. Thometz, that he impersonated her to further harass her, and that NYU terminated her in retaliation for pursuing these claims. The federal action alleged discrimination by NYU and the Academic Dean, and individually by Thometz and his wife—NYU Professor Eve Meltzer—based on plaintiff's gender, age, sexual orientation, and religion. The complaint also included a claim for intentional infliction of emotional distress.

The District Court dismissed plaintiff's federal claims on the merits and declined to exercise supplemental jurisdiction over the non-federal claims, and to the extent plaintiff appealed, the Second Circuit affirmed. Plaintiff then filed the underlying action in state court alleging her state and city claims. I agree for the reasons stated by the majority that plaintiff is collaterally estopped from pursuing her claims against NYU and the individual defendants, with one categorical exception (*see* majority op at 11). Plaintiff sufficiently pleads hostile work environment claims under the NYCHRL against Thometz and Meltzer based on their alleged individual conduct as fellow employees and therefore those claims should proceed. Contrary to the majority's conclusion, the viability of those claims does not depend on whether these defendants acted in a supervisory role.

II.

A.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. As the clearest indicator of legislative intent is the statutory

text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." (*Majewski v Broadalbin-Perth Cent. Sch. Dist.*, 91 NY2d 577, 583 [1998] [internal citations and quotations omitted]). In that vein, "resort must be had to the natural signification of the words" (*id.*). Statutory interpretation is not an invitation to rewrite the law by "discovering" some meaning not intended by the drafters or ignoring words and their clear and obvious import. "It is not for this Court to engraft limitations onto the plain language of the statute. Indeed, '[t]his Court should be very cautious in interpreting statutes based on what it views as a better choice of words when confronted with an explicit choice made by the Legislature' " (*Kimmel v State*, 29 NY3d 386, 401 [2017], quoting *Matter of Orens v Novello*, 99 NY2d 180, 190 [2002]). As we have repeatedly stated, we have no power to "legislate under the guise of interpretation" and if there is "an unintended result of the plain language of the statute, then that is a consequence best left to the Legislature to evaluate and, if necessary, resolve" (*id*. at 401 [internal quotations and citations omitted]). In addition to these established rules, we must also consider the City Council's public policy and its explicit directive to broadly construe the NYCHRL to achieve its remedial purpose.

The NYCHRL opens with a declaration of findings that discrimination in all its forms threatens individual rights and the foundation of our society:

> "In the city of New York, with its great cosmopolitan population, there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences including those based on race, color, creed, age,

national origin, immigration or citizenship status, gender, sexual orientation, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, uniformed service, height, weight, any lawful source of income, status as a victim of domestic violence or as a victim of sex offenses or stalking, whether children are, may be or would be residing with a person, or conviction or arrest record. The City Council hereby finds and declares that prejudice, intolerance, bigotry, and discrimination, bias-related violence or harassment and disorder occasioned thereby threaten the rights and proper privileges of its inhabitants and menace the institutions and foundation of a free democratic state. The council further finds that gender-based harassment threatens the terms, conditions and privileges of employment" (Administrative Code § 8-101).

The NYCHRL is ambitious in its goal to deter and eliminate this recognized great evil of discrimination and bias. According to the New York City Commission on Human Rights, the entity charged with enforcing the law and educating the general public on the law's protections and rights thereunder, the NYCHRL "is one of the most comprehensive civil rights laws in the nation" (Inside the NYC Commission on Human Rights, NYC Commission of Human Rights, https://www.nyc.gov/site/cchr/about/inside-cchr.page [accessed Mar. 28, 2024]). The NYCHRL:

"prohibits discrimination in employment, housing, and public accommodations based on race, color, religion/creed, age, national origin, immigration or citizenship status, gender (including sexual harassment), gender identity, sexual orientation, disability, pregnancy, marital status, and partnership status. Interns, whether paid or not, are considered employees under the Law.

"In addition, the Law affords protection against discrimination in employment based on unemployment status; arrest or conviction record; credit history; caregiver status; status as a victim of domestic violence, stalking, and sex offenses; and

sexual and reproductive health decisions" (*id*.; *see also* Administrative Code § 8-107). The NYCHRL provides for monetary damages and penalties but also requires affirmative mitigation measures to deter discrimination and encourage enforcement (Administrative Code §§ 8-502; 8-127; 8-107 [13], [29]).

To halt what the City Council has repeatedly found to be an overly narrow judicial construction of the NYCHRL's public policy and the proscriptions against discriminatory conduct, Administrative Code § 8-130 mandates that "the provisions [of the NYCHRL] shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights law, including those laws with provisions worded comparably [ ], have been so construed" and "[e]xceptions to and exemptions from" the NYCHRL "shall be construed narrowly in order to maximize deterrence of discriminatory conduct" (Administrative Code § 8-130 [a], [b]; *see also Syeed v Bloomberg L.P.*, — NY3d —, 2024 NY Slip Op. 01330, at *2 [Mar 14, 2024] [acknowledging that courts must broadly construe the NYCHRL]).

The NYCHRL also names *Albunio v City of New York* (16 NY3d 472 [2011]), *Bennett v Health Mgt. Sys., Inc*. (92 AD3d 29 [1st Dept 2011]), and the majority opinion in *Williams v New York City Hous. Auth.* (61 AD3d 62 [1st Dept 2009]) as "cases that have correctly understood and analyzed the liberal construction requirement [ ] and that have developed legal doctrines accordingly that reflect the broad and remedial purposes of this title" (Administrative Code § 8-130 [c]). Those cases clearly explain that "broad" means broad, that the NYCHRL tips in favor of plaintiffs in order to eliminate discrimination and

bias throughout our society, and that courts have no discretion to limit the application of the NYCHRL.

In *Albunio*, the Court acknowledged that section 8-130 requires that "we *must* construe" all provisions of the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (16 NY3d at 477-478 [emphasis added]). The Appellate Division in *Bennett* declared that, "the existence of discrimination—a profound evil that New York City, as a matter of fundamental public policy, seeks to eliminate—demands that the courts' treatment of such claims maximize the ability to ferret out such discrimination, not create room for discriminators to avoid having to answer for their actions before a jury of their peers" (92 AD3d at 34). *Williams* is even more direct about the Council's mandate to the judiciary: "[T]he text and legislative history represent a desire that the [NYCHRL] meld the broadest vision of social justice with the strongest law enforcement deterrent. Whether or not that desire is wise as a matter of legislative policy, our judicial function is to give force to legislative decisions" (*Williams*, 61 AD3d at 68-69 [internal citations, quotation marks, and footnotes omitted]). Therefore, similarly-worded federal and state antidiscrimination statutes and corresponding caselaw demarcating the boundaries of discriminatory actions are merely "a floor below which the [NYCHRL] cannot fall, rather than a ceiling above which the local law cannot rise" (Local Law No. 85 [2005] of City of NY § 1). The NYCHRL is intended to, and does, exceed the protections of other statutes.

B.

Plaintiff alleges that Thometz and Meltzer discriminated against her in violation of

section 8-107 (1) (a) of the NYCHRL. That section provides:

> "It shall be an unlawful discriminatory practice . . .For an
> employer *or an employee* or agent thereof because of the actual
> or perceived age, creed, [ ] disability, [or] sexual orientation [ ]
> of any person [ ] to discriminate against such person in
> compensation or in terms, conditions or privileges of
> employment" (emphasis added).

By its plain text, the only limitation on an employee's liability is the requirement that the

employee's actions are undertaken because of a person's actual or perceived protected

classification and that the discrimination affects terms or conditions of employment. In

contrast, an employer may be liable for its own unlawful discriminatory practice based on

an employee's discriminatory conduct in violation of § 8-107 (1) (a), or where the

employee "exercised managerial or supervisory responsibility", "the employer knew of the

employee's…conduct, and acquiesced…or failed to take immediate…corrective action" or

"should have known of the…discriminatory conduct and failed to exercise reasonable

diligence to prevent such discriminatory conduct" (§ 8-107 [13] [a], [b] [1]-[3]).[1]  In other

words, the NYCHRL recognizes a private right against the employee and imputes that

discriminatory conduct to the employer under certain enumerated circumstances.

---

[1] An employer may assert its efforts to prevent, detect and correct discrimination at the
workplace, in mitigation of civil penalties and punitive damages (Administrative Code §
8-107 [13] [e]; *see also id.* § [13] [d]).

Accordingly, several state and federal courts have treated section 8-107 (1) (a) as creating individual liability for employees. In *Malena v Victoria's Secret Direct, LLC*, a federal district court concluded that "the NYCHRL provides for individual liability of an employee regardless of ownership or decision making power" where the individual defendant "actually participated in the conduct giving rise to the plaintiff's discrimination . . . claim," and held that an employee could be liable, in that case, for pregnancy discrimination against their administrative assistant despite not having "authority to hire or fire Plaintiff or to unilaterally set Plaintiff's schedule, hours, or salary" (886 F Supp 2d 349, 366 [SDNY 2012]). In *Murphy v ERA United Realty*, the Appellate Division concluded the plaintiff had stated a claim for individual liability under section 8-107 (1) (a) of the NYCHRL against two coworkers and a supervisor for sexual harassment, while only upholding the claim against the supervisor under NYSHRL (251 AD2d 469). The *Murphy* court held that coworker liability exists under NYCHRL, noting that that Executive Law § 296 (1) (a) only mentions "employer" but NYCHRL mentions "employer or employee or agent" (*id.* at 471).

More recent federal cases have confirmed that a plaintiff may assert a claim under the NYCHRL for direct individual liability against a non-supervisory employee, even if no such claim was viable under federal or state antidiscrimination laws. In *Dikambi v City Univ. of New York* (2023 WL 5713716, at *5 [SD NY Sept. 5, 2023, No. 19-CV-9937 (RA)]), the court held the individual nonsupervisory employee—in that case a professor— could be liable for alleged sexual harassment under the NYCHRL, but not Title VII,

because unlike the federal law, the NYCHRL recognizes individual harasser liability of employees, regardless of supervisor status. In *Bonterre v City of New York*, the court upheld claims for individual liability under the NYCHRL against the plaintiff's alleged sexual harasser—whom the plaintiff described as an employee—but dismissed the individual liability NYSHRL claim as not cognizable under the state laws, (No. 18 CIV. 745 [ER], 2021 WL 4060358, at *9 [SD NY Sept. 7, 2021]). Similarly, in *Eckhart v Fox News Network, LLC*, the court found the sexual harasser was not plaintiff's supervisor, and therefore could not be liable under the NYSHRL but could be individually liable under the NYCHRL because the City law "provides a broader basis for direct individual liability than does the NYSHRL" (2021 WL 4124616, at *16 [SD NY Sept. 9, 2021, No. 20-CV-5593 (RA)], on reconsideration in part, 2022 WL 4579121 [SD NY Sept. 29, 2022, No. 20-CV-5593 (RA)]). In *Rasmy v Marriott Int'l, Inc*. (2024 WL 456423, at *1 [SD NY Feb. 5, 2024], No. 16-CV-4865 [JSR]), the court upheld a jury verdict which rejected liability against all defendants—including the employer—except one of the plaintiff's former coworker, who the jury found liable for retaliation under the NYCHRL and charged for back pay damages.

Further, courts have not required employer liability as a predicate to individual liability under the NYCHRL (*see e.g. Dikambi*, 2023 WL 5713716, at *5 [SD NY Sept. 5, 2023, No. 19-CV-9937 (RA)] [granting employer summary judgment on the plaintiff's NYCRL hostile work environment claims while denying summary judgment on individual liability claim against nonsupervisory harasser]). In *Springs v City of New York*, the court

noted with respect to a plaintiff's individual claims against non-supervisory fellow firefighters that, due to NYCHRL's unique use of "employee" in section 8-107 (1) (a), "individual employees can be held directly liable for discrimination without any requirement that illegal conduct be imputed to their employer" (2019 WL 1429567, at *16).[2] Other courts have also noted that section 8-107 (1) (a) creates a private right of action against individual employees separate from aider-and-abettor liability (*see e.g. Dillon v Ned Mgt., Inc.*, 85 F Supp 3d 639, 648 [ED NY 2015]; *Baldwin v Bank of Am.*, N.A., 42 Misc 3d 1203 [A] [Sup Ct, Kings County 2013]).[3]

Turning to the complaint here, plaintiff sufficiently pleads that the alleged conduct of these defendants created a hostile work environment. A hostile work environment claim is based on a theory of discriminatory harassment. It is a well-settled principle of employment discrimination law both federally and locally that coworkers may create a hostile work environment by, for example, using slurs, engaging in sexual harassment, or participating in anonymous identity-based harassment campaigns, as plaintiff alleges here

---

[2] The majority notes that the plaintiff in Springs "did not bring a claim based on individual liability," but then ignores that the court nonetheless acknowledged the such liability may serve as the underlying discriminatory conduct in support of an aiding and abetting claim, even if an employer is not liable: "The Court is cognizant that Plaintiff has not brought a NYCHRL discrimination claim against any of the individual defendants [ ]. *However, Defendants cite no case that suggests that the underlying violation must be pleaded as well as established*" (*Springs v City of N.Y.*, 2019 WL 1429567, *15 n 4, *16 [SD NY Mar. 28, 2019, No. 17 Civ. 451 (AJN)]). In other words, because a nonsupervisory coworker—like the firefighter in *Springs*—may be found individually liable under the NYCHRL, a plaintiff, may base an aiding and abetting claim against individual defendants even without a finding of employer liability, because "a finding of coworker liability" is a sufficient "predicate for an aiding and abetting discrimination claim" (*id.* at 16).

(*see* 18 NY Jur 2d Civil Rights § 48, citing *New York State Dept. of Corr. Servs. v New York State Div. of Human Rights*, 53 AD3d 823 [2008] ["A hostile work environment was established where there was testimony that a coemployee had referred to the plaintiff in obscene and sexually demeaning terms in the presence of other employees on numerous occasions, that such comments were persistent and relentless, that the coemployee was also responsible for offensive writings and sexually explicit graffiti prominently displayed in the workplace and also filed baseless complaints against the plaintiff"]; *see also* Legal Enforcement Guidance on Discrimination on the Basis of Immigration Status and National Origin, NYC Commission on Human Rights at 22 [Sept. 2019], https://www.nyc.gov/assets/cchr/downloads/pdf/publications/immigration-guidance.pdf ["Under the NYCHRL, behavior that constitutes a hostile work environment is much broader than the 'severe or pervasive' standard at the federal level; it is simply being treated less well because of membership to a protected category"]; 2021 Settlement Highlights, NYC Commission on Human Rights, https://www.nyc.gov/site/cchr/enforcement/2021-settlements.page [accessed Mar. 27, 2024] [settled hostile work environment claim based on gay plaintiff who "endured a hostile work environment and name calling by the restaurant's kitchen staff"], Legal Enforcement Guidance on Employment Discrimination on the Basis of Age, NYC Commission on Human Rights [July 2020], https://www.nyc.gov/assets/cchr/downloads/pdf/AgeDiscriminationGuide-2020.pdf [accessed Mar. 27, 2024] [for a hostile work environment under the NYCHRL, "conduct must treat plaintiff 'less well' because of (a protected characteristic). It is an affirmative defense that the behavior was a petty, slight, or trivial inconvenience"] [internal quotations

omitted]; Height and Weight Protections in the New York City Human Rights Law, NYC Human Rights Commission, https://www.nyc.gov/site/cchr/media/height-and-weight.page [accessed Mar. 27, 2024] ["creating or permitting a hostile environment" on the basis of a protected category is illegal]; *Domingo v Avis Budget Group, Inc.*, 219 AD3d 964, 966 [2d Dept 2023]; *Williams*, 61 AD3d at 78-80).

A hostile work environment, by definition, affects an employee's workplace conditions. Thus, to prove a hostile work environment, the burden is on the employee to show that they were treated less well on the basis of a protected classification (*Williams*, 61 AD3d at 78). Where an employee is subject to hostile conduct based on any of the NYCHRL's protected classifications, they are subject to different workplace conditions than their coworkers—conditions which affect their employment (*Williams*, 61 AD3d 62, 75-77 [ratified by Administrative Code § 8-130 (c), citing Administrative Code § 8-107(1)(a)]). Thus, if a worker creates a hostile work environment through their independent actions—regardless of whether the employer is vicariously liable or directly liable for creating, sustaining and tolerating a hostile workplace—the worker is liable for their own actions. "In order to hold an individual defendant liable for creating a hostile work environment under NYCHRL, evidence must show that the claim relates directly to the conduct and behavior of the individual" (*Dillon*, 85 F Supp 3d at 658; *see also Nelson v HSBC Bank USA*, 87 AD3d 995, 999 [2d Dept 2011] [explaining that the rationale of the codified sexual harassment standard from *Williams* "maximizes deterrence, ensures that

discrimination plays no role in employment, and recognizes that discrimination violations are, per se, serious injuries"]).

Moreover, in a 2018 amendment to the NYCHRL, the City Council expressly found and declared "that gender-based harassment threatens the terms, conditions and privileges of employment" (Administrative Code § 8-101).[4] Thus, under section 8-107(1)(a) of the NYCHRL, a person may sue an employee for allegedly creating or participating in a hostile work environment based on the complainant's protected classification, including harassment based on gender. For example, a female firefighter or police officer can sue male coworkers who, solely because of her gender, call her by sexually derogatory names, make unwanted sexual overtures, commit physical assaults, damage her equipment, or post sexual images such as pornographic images to demean the complainant and other women firefighters (*Springs*, 2019 WL 1429567, at \*16). A real estate agent can sue her coworkers for unwanted sexual touches and crude comments (*Murphy*, 251 AD2d 469 [2d Dept 1998]). A Black dancer at a club can sue her harasser for demanding that she have sex with him and calling her and other darker-skinned entertainers racial slurs (*Quintero v Angels of the World, Inc*., 2021 WL 4464123, at \*7 (ED NY, Sept. 10, 2021, No. 19-CV-6126 [DG]). A gym employee can sue his harasser

---

[4] The majority attempts to recharacterize the statutory text, attempting to trivialize the controlling NYCHRL language as simply my "suggestion" that a coworker may affect "conditions of employment" in gender-based harassment cases (*see* majority op at 15 n 5). Apparently, the majority missed part of the NYCHRL which states, "gender-based harassment threatens the terms, conditions, and privileges of employment" (Administrative Code § 8-101).

for groping him and regularly making unwanted comments on the genitalia of staff and patrons (*Setty v Fitness*, 2018 WL 8415414, at *9 [ED NY, Dec. 18, 2018, No. 17CV06504NGGSMG]). And, a housekeeper can sue her harasser for questioning her about her sexual history, describing his genitalia in detail, locking her in a cleaning assignment, and sexually assaulting her (*Antoine v Brooklyn Maids 26, Inc.*, 489 F Supp 3d 68, 89 [ED NY 2020]). Plaintiff has met her pleading burden; she alleges that defendants Thometz and Meltzer sent her harassing emails and caused her to receive unsolicited mail at her NYU physical mailbox, including pornographic materials— actions she claims evince discrimination based on her gender and sexual orientation.

C.

The majority rejects our rules of construction, the NYCHRL's plain text, and this supporting case law to conclude that coworkers cannot be individually liable because they cannot affect the "terms, conditions, and privileges of employment." Therefore, the majority holds, the alleged harassment by Thometz and Meltzer, including gender-based harassment, did not affect the conditions of plaintiff's employment (*see* majority op at 13). The majority is wrong.

As I have explained, a hostile work environment created or maintained by a coworker necessarily, as a matter of black letter discrimination law, affects the claimant's "conditions" of employment. To be clear, not all coworker behavior constitutes discrimination "in terms, conditions or privileges of employment" (Administrative Code § 8-107 [a] [3]). But, in the case of a hostile work environment based on a protected

classification and gender-based harassment, the harasser's conduct results in treatment different from other coworkers and renders the harasser liable under the NYCHRL, even if such conduct is not actionable under other federal and state laws.

The majority also goes against the tide of the caselaw, arguing some cases did not involve a claim of individual liability (*see* majority op 14-15). The majority's observation is just that, an observation, and one that is irrelevant because those courts' statements of the applicable law reconfirms that direct individual liability claims are cognizable under the NYCHRL for two reasons. First, NYCHRL claims must be "analyzed separately and independently from any federal and state claims" and also must be interpreted "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Rasmy v Marriott Int'l, Inc*., 2024 WL 456423, at \*2 [SD NY Feb. 5, 2024, No. 16-CV-4865 (JSR)], citing *Mihalik v Credit Agricole Cheuvreux N. Am., Inc.*, 715 F3d 102, 112 [2d Cir 2013]; *see also Williams*, 61 AD3d at 67-68; *Albunio*, 16 NY3d at 477-478). Second, the NYCHRL prohibitions apply to "employees" and thus the NYCHRL provides "a broader basis for individual liability than 'state or federal law'" which do not recognize individual liability (*Rasmy v Marriott Int'l, Inc*., 2024 WL 456423, at \*2, citing *Malena*, 886 F Supp 2d 349, 366).[5] Unlike these other courts, the majority fails to apply the mandatory broader reading to the NYCHRL.

---

[5] There are other examples of cases that neither graft a requirement of supervisory authority onto NYCHRL individual liability as the majority does, nor do they analyze whether defendants are supervisors when evaluating liability under the NYCHRL (*see e.g. Milord-Francois v New York State Off. of Medicaid Inspector Gen*., 635 F Supp 3d 308, 325 [SDNY 2022] ["Even if the State or the state agency which is the employer is not held

More to the point, the majority has no explanation why "employee" does not mean employee, but rather "supervisory employee" and has no explanation for why its construction "is reasonably possible" when no such limitations on liability are anywhere found or suggested by the NYCHRL. If the Council intended "employee" to mean only an employee with a supervisory or managerial role, it could have said so—just as it included this narrowing language in other parts of the statute (*compare* § 8-107 [13] [b] [1] [describing employer liability when an "employer or agent exercised supervisory or managerial authority"] with § 8-107 [13] [b] [2] [describing employer liability in the alternative when the "employer knew of the employee or agent's discriminatory conduct," which includes no supervisory requirement]). Implicitly reading a narrowing modifier into the statute's plain language of "employee" runs counter to canons of statutory interpretation (*see e.g. DCH Auto v Town of Mamaroneck*, 38 NY3d 278, 293 [2022] [when

---

liable, the disjunctive phrasing of the NYCHRL makes clear that state employees owe duties under the law and can be held personally liable for violation of those duties."; *Banks v Corr. Servs. Corp.*, 475 F Supp 2d 189, 199 [ED NY 2007] [contrasting individual liability under NYSHRL, which is limited to employers and supervisors, to individual liability under NYCHRL, which applies to all employees]; *Walters v Bronx-Lebanon Hosp. Ctr.*, 2004 WL 770962, at *12 [SD NY Apr. 9, 2004, No. 01 CIV. 4196 (DFE)] [contrasting individual liability under NYSHRL as limited to those with decision-making power, with individual liability under NYCHRL, which "provides individual liability of employees regardless of [] decision-making power"]; *Erasmus v Deutsche Bank Americas Holding Corp.*, 2015 WL 7736554, at *8 [SD NY Nov. 30, 2015, No. 15 CIV. 1398 (PAE)] [same]; *Friederick v Passfeed, Inc.*, 2022 WL 992798, at *9 [SD NY Mar. 31, 2022, No. 21-CV-2066 (RA)] [same]; *Bresilien v City of New York*, 2020 WL 1275470, at *11 [ED NY Mar. 17, 2020, No. 16CV4857AMDRER] [same]; *Gurley v David H. Berg & Assocs.*, 2022 WL 309442, at *8 [SD NY Feb. 2, 2022, No. 20 CIV. 9998 (ER)] [same]; *Thomas v New York City Health & Hosps. Corp.*, 2004 WL 1962074, at *9 [SD NY Sept. 2, 2004, No. 02 CIV. 5159 (RJH)] ["While the NYCHRL clearly provides for liability not only of an employer, but also for 'an employee or agent thereof,' the NYSHRL's reference only to "employer" has been read to provide for a more limited scope of liability."]).

"the statutory language is broader" unstated limitations on broad language cannot be read into the text]; *Diegelman v City of Buffalo*, 28 NY3d 231, 237 [2016] ["we cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit because the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended. In other words, we may not create a limitation that the Legislature did not enact"] [internal citations and quotation marks omitted]; *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*, 21 NY3d 55, 62 [2013] ["a court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit because the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended"] [internal citations and quotations omitted]).

Perhaps most inexplicable is the majority's conclusion that plaintiff's claims that she was subjected to gender-based harassment by nonsupervisory coworkers is not actionable. The NYCHRL states explicitly that gender-based harassment in the workplace affects conditions of employment of the target victim (Administrative Code § 8-101). While an employer's *liability* hinges on the employer's knowledge and response to this harassment, employer liability is irrelevant to whether gender-based harassment affects conditions of employment. The City Council has concluded that it always does. We are not at liberty to say otherwise.

III.

The NYCHRL's plain text and liberal construction mandate are enough for us to find in favor of plaintiff and restore her employee hostile workplace claims. However, there is more. As discussed below, several amendments to the NYCHRL confirm that this is a cognizable claim.

Prior to 1991, harassers could only be sued under an "aiders and abettors" liability theory or when they had an ownership interest or some authority to do more than follow orders (Administrative Code § 8-107 [6]; Gurian, *A Return to Eyes on the Prize*, 33 Fordham Urb LJ at 120). "[I]ndividuals were liable for their own discriminatory acts in the housing and public accommodations contexts, but were not generally liable in the employment context" (*id.* at 117). Instead, the NYCHRL only provided for individual liability against employers, which as interpreted by the City Commission on Human Rights—the agency charged with implementing the NYCHRL—included persons responsible for "disciplining, hiring, firing, and scheduling shifts for employees" (*Matter of the Complaints of Abdalkwy v Douglas Elliman-Gibbons & Ives*, 1991 WL 1288827, *17 [NYC Comm. Human Rights. 1991, Nos. EM00106-4/19/88, EM00104-4/19/88, EM00105-4/19/88] [Dec. & Or.]). In other words, at the time, "the code sp[oke] only of employers," absent those responsibilities, "a co-worker [could not] apparently be charged with discrimination against a co-worker under the Code. Only amendment of the Code by legislation c[ould] remedy this problem" (*id.* at *18 n 4).

That same year, the City Council broadly overhauled the NYCHRL to, among other things, add a private right of action and extend liability for discriminatory conduct by an "employer or employee or agent" (Local Law No. 39 [1991] of City of NY § 1). As noted above (*see* supra at 17), the inclusion of "or an employee" made the NYCHRL distinct from its state and federal antidiscrimination counterparts, which did not recognize individual coworker liability (*Livingston v City of New York*, 563 F Supp 3d 201, 256 [SD NY 2021]).

This intended expansion of liability under the NYCHRL was well understood, as evidenced by a 1989 Memorandum from the Office of the Mayor to the City Council supporting the 1991 amendments which declared, "[i]f an employee is found to have engaged in discrimination**,** *[they] would be individually liable whether or not the employer could be found liable under these provisions*" (Mayor of City of NY, Legal/Statutory Mem on Local Law 39 at 11 [Sept. 26, 1989] [emphasis added]). At the 1991 signing, the Mayor also declared both the need and the intended application of the NYCHRL prescriptions to individual employees:

> "[U]nder current local law, an employee who has been the victim of sexual or racial harassment at the hands of a co-worker can sue her employer but cannot sue the co-worker himself. Without the possibility of legal action, co-worker harassment has continued to poison many of our workplaces. The new law takes the fundamental step of making all people legally responsible for their own discriminatory conduct" (Remarks by Mayor Dinkins at Public Hearing on Local Laws [June 18, 1991], available at http://www.antibiaslaw.com/sites/default/files/all/LL39LegHist-Mayor.pdf [accessed Mar. 28, 2024]).

The Local Law Memoranda, Report of the Committee on General Welfare on Local Law 39, on June 18, 1991, graphically represented this change in the law as follows:

| Liability of employees and agents for their own biased acts. | |
| --- | --- |
| CURRENT LAW | NEW LAW |
| No explicit coverage in employment context, although CCHR caselaw provides for liability where employee had power to do more than carry out decisions made by others. | Employees and agents are responsible for their own discriminatory acts. |

(Report of the Comm. on Gen Welfare, Human Rights Law/ "Complete Overhaul," Local Law 39 at 187 [June 18, 1991], Local Laws of the City of New York for the Year 1991).

After the amendment, the Appellate Division, Second Department correctly interpreted the NYCHRL as providing for an employee's liability based on the employee's own discriminatory conduct, where the plaintiff was subjected to severe sexual harassment as a real estate broker, including "unwanted physical advances and crude and insulting remarks" (*Murphy*, 251 AD2d at 470). However, in *Priore*, the First Department misconstrued the amendment and found that coworker harassers were not liable for their conduct (307 AD2d 67, 74-75). The case involved a clubhouse manager for the New York

Yankees who sued the Club, along with several of the team's managers and players,

alleging sexual orientation harassment from players, as well as retaliatory discharge by the

team. The Appellate Division dismissed the claims against the employer and individual

members of management on summary judgment, finding the employer was not formerly

on notice of the harassment from the players, and, in effect, there was no evidence of

discrimination by the employer or management—only the players (*id.* at 72). The Appellate

Division also dismissed the claims against the individual non-supervisory players for

physical and verbal harassment, grafting an artificial limitation onto section 8-107 (1) (a)

"employee"-based liability. The entirety of the Appellate Division's reasoning on this issue

is as follows:

> "Section 8–107(1)(a) extends liability to 'an employer *or an employee or agent thereof*,' in substitution for the State statute's 'employer *or licensing agency*' (our emphases). The local ordinance thus includes fellow employees under the tent of liability, but only where they act with or on behalf of the employer in hiring, firing, paying, or in administering the 'terms, conditions or privileges of employment'—in other words, in some agency or supervisory capacity. There is no indication in the local ordinance, explicit or implicit, that it was intended to afford a separate right of action against any and all fellow employees based on their independent and unsanctioned contribution to a hostile environment. The inclusion of the word 'employee' in the local ordinance does not automatically open the door of liability to an entirely new category of defendants; the term must be read in context" (*id.* at 74).

That reasoning fails on its own terms. First, the language of the amendment

expanding the law's coverage to include employees and agents does not support the court's

conception of its impact on liability. Second, the inference drawn by the court—that

"employee or agent" is equivalent to the "licensing agency" reference contained in the

*NYSHRL* and thus requires an employee to act in a supervisory role for liability under the

more expansive NYCHRL—contradicts fundamental rules of construction and the explicit

directive of section 8-130.

As a drafter of both the 1991 and 2005 amendments, Craig Gurian, explained:

> "How, then, did the court in *Priore* try to justify its conclusion that there was no individual liability? The court literally had to invent a legislative history. It asserted that, when the City extended liability to 'an employer or an employee or agent thereof,' it did so merely 'in substitution for the State statute's "employer or licensing agency".' In fact, however, section 8-107(1)(a) of the City Human Rights Law did not deal with licensing agencies before the 1991 Amendments, and it did not deal with licensing agencies after the 1991 Amendments. There had been a separate provision of the City Human Rights Law that had dealt both with age discrimination by employers and with licensing agencies. The proscription against age discrimination by employers was moved into section 8-107(1)(a); the proscription against age discrimination by licensing agencies was moved into an entirely different section, to join other proscriptions on certain conduct by licensing agencies. Accordingly, the revision to section 8-107(1)(a) did not represent a substitution of language from the State Human Rights Law, it represented an addition of language not found in the State Human Rights Law.

> "To go along with its tale of how the language of the law changed, the *Priore* court provided a theory of Council intent. It speculated that the Council had only wanted to permit individual liability where the individual had been acting with or on behalf of the employer in some agency or supervisory capacity. The problem is, if that were the Council's purpose, it need not have acted at all: section 8-107(6) of the City Human Rights Law already was broader, providing that it 'shall be an unlawful discriminatory act for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so' " (Craig Gurian, *A Return*

> *to Eyes on the Prize: Litigating Under the Restored New York*
> *City Human Rights Law*, 33 Fordham Urb LJ 101, 120 [2006]).

The majority cites to *Priore v New York Yankees*, as well as *Kwong v City of New York* and *Eustache v Board of Educ.*, which merely track back to *Priore* and lack any independent analysis of "employee" liability (*Priore v New York Yankees*, 307 AD2d 67 [2003]; *Kwong v City of New York*, 204 AD3d 442, 446 [2022] [finding supervisory capacity necessary for individual liability by solely citing to *Priore* without further discussion]; *Eustache v Board of Educ.*, 221 AD3d 452, 453 [1st Dept 2023] [citing solely to *Kwong* for the same proposition]). Tellingly, the limited number of post-2016 decisions that decline to find individual coworker liability under NYCHRL rely on string cites that exclusively trace back to *Priore* for the proposition that an implied supervisory requirement can be read into the plain text on individual liability for employees. Similarly, none of these decisions address, let alone apply, the liberal construction requirements of the NYCHRL. From this line of cases, a supervisory limitation on individual liability can only be gleaned from the judicial policymaking ground adopted in the *Priore* decision, as the limitation is unmistakably absent from both statutory and legislative history. None of these cases evaluate whether *Priore* is still good law, which it plainly is not.

*Priore*'s analytical shortcomings are reason enough to reject both its premise and conclusions, but significantly *Priore* has been overruled explicitly by the City Council, rendering it useless in the analysis here.

In the Local Civil Rights Restoration Act of 2005, the City Council again amended the NYCHRL, and expanded the law's liberal construction requirement. As it had in the

past, the Council acted in response to judicial misapplications of the NYCHRL, and legislatively overruled those decisions. As relevant here, during a September 15, 2005, hearing on the proposed amendment, Council Member Palma identified *Priore*, as one of the cases that should no longer be followed, naming Craig Gurian's testimony as a guide for legislative intent for the 2005 amendments:

> "There are many illustrations of cases, like *Levin* on marital status, **Priore**, *McGrath* and *Forrest* that have either failed to interpret the City Human Rights Law to fulfill its uniquely broad purposes, ignore the text of specific provisions of law, or both. With [the Restoration Act], these cases and others like them will no longer hinder the vindication of our civil rights. The work of the Anti-Discrimination Center [Craig Gurian] was particularly important to the development and passage of this bill, and its testimony is an excellent guide to the intent and consequences of legislation we pass today" (Annabel Palma, Statement at the Meeting of the New York City Council 41-42 [Sept. 15, 2005] [emphasis added]).

Gail Brewer, the sponsor of the 2005 amendments, also started her testimony by thanking Gurian for his assistance, and proposed the first witness panel begin with him, because of his "very leading role in this legislation" (Gail Brewer, Statement at the Meeting of the New York City Council 41-42 [Sept. 22, 2004]).

In Gurian's testimony, which the hearing transcript indicates was meant to be indicative of legislative intent, Gurian highlighted the problem of *Priore* when testifying in favor of the 2005 amendment to the NYCHRL:

> "[Employee liability] wasn't added because it was thought that the bill was too short and that the Human Rights Law needed to have a few more fluffy words for an employer or an employee or agent, thereof, to discriminate. There could not have been a clearer signal that individuals were now liable ….

And this wasn't controversial, it was stronger than State law. It was stronger than Title 7. But it wasn't controversial until last year when a State Appellate Court, a panel of the First Department [in *Priore*], actually said that the City Human Rights Law couldn't really mean what it said. Because it was broadening liability too much.

"Instead of engaging in what the court was suppose (sic) to do which is liberally interpreting the law to accomplish its purposes, the court literally invented legislative history to justify a narrow result" (Craig Gurian, Statement at the Meeting of the New York City Council [Sept. 22, 2004]).[67]

At this same hearing, a gay brewery worker testified about the importance of

individual liability based on his experiences with discrimination, including an incident

---

[6] At a later hearing, Gurian again referenced *Priore* on the issue of individual liability:

"A court has recently ignored the Council's language in making individual employees liable for their own discriminatory conduct. [] So, it's just not going to work with the individual fixes, the broad fix is necessary, and, really, it only brings us back to where we were supposed to be in the first place, having the law liberally construed" (Craig Gurian, Statement at the Meeting of the New York City Council [April 14, 2005]).

[7] The majority rejects Gurian's interpretation of the 2005 amendment and *Priore* , citing to post-2005 First Department cases that cite to *Priore* (*see* majority op at 14 n 4). However, those cases do not provide any analysis of the statutory text or an explanation for their reliance on Priori in light of the amendment NYCHRL. Although the majority suggests that Gurian has no special insight into the NYCHRL, the First Department has cited him approvingly in the past (*Williams*, 61 AD3d at 68, quoting *Ochei v Coler/Goldwater Mem. Hosp.*, 450 F Supp 2d 275, 283 n 1 [SD NY 2006] [noting Gurian's article was described by SD NY as, "an extensive analysis of the purposes of the Local Civil Rights Restoration Act, written by one of the Act's principal authors"]). And more importantly for our purposes here, there is no evidence in the legislative history that Gurian's interpretation of the NYCHRL and the Council's intent was erroneous or a minority view. To the contrary, each hearing on the 2005 amendments favorably referenced Gurian and his interpretation of *Priore*.

during which a bartender punched him and called him a derogatory epithet, concluding, "people need to be liable for their own actions… as a deterrent…If they know, oh, they can only sue the company, nothing is going to change" (Carl Ferrentino, Statement at the Meeting of the New York City Council [April 14, 2005]). Thus, it was clear to the Council that individual employee discriminatory conduct is harmful to individuals, but also poisons the workplace and undermines the Council's policy of eliminating discrimination and bias in our communities. And the Council was also fully aware that a victim of employee harassment had no recourse against the employee under existing federal or state law unless the harasser acted pursuant to supervisory authority (*id.*; *Murphy*, 251 AD2d at 471 [only individual liability for supervisors under NYSHRL]; *Tomka v Seiler Corp*., 66 F3d 1295, 1314 [2d Cir. 1995] [no individual liability under Title VII]).

In 2009, the Appellate Division, First Department, acknowledged that the 2005 amendments "legislatively overruled" cases that misconstrued the law, citing the section of the 2005 Council debates that mentioned *Priore* by name (*Williams*, 61 AD3d at 67-68). The court explained that "the Restoration Act notified courts that (a) they had to be aware that some provisions of the City HRL were textually distinct from its State and federal counterparts, (b) all provisions of the City HRL required independent construction to accomplish the law's uniquely broad purposes and (c) *cases that had failed to respect these differences were being legislatively overruled*" (*id.* at 67-68 [emphasis added]).

The New York City Commission on Human Rights has noted that, in its discussion leading up to the 2005 amendments, "the City Council cited several specific judicial decisions as examples of overly narrow judicial construction of the City HRL," footnoting,

"*Priore v. N.Y. Yankees*, 307 AD2d 67 (1st Dept 2003) (holding individual employees not liable for their discriminatory conduct)." Indeed, during hearings, "[t]he [City Council] Committee [on General Welfare] opined that several principles should guide courts in interpreting the City HRL: discrimination should play no role in employment decisions; traditional methods and principles of law enforcement should be applied in the civil rights context; and victims should receive full compensation for injuries" (*Chauca v Abraham*, 30 NY3d 325, 329 [2017], Brief for Amicus Curiae City of New York, 9-10, available at https://www.nyc.gov/assets/cchr/downloads/pdf/NYSCA-Punitive-Damages-VERONIKA-CHAUCA-v-JAMIL-ABRAHAM-Individually-PARK-MANAGEMENT-SYSTEMS-LLC-aka-Park-Health-Center-and-ANN-MARIE-GARRIQUES-2017.pdf). As explained in a 2018 Commission on Human Rights Decision and Order comparing the Second Department's *Murphy* decision and *Priore*:

> "The Second Department interprets the NYCHRL to cover discrimination claims against individual co-employees, regardless of ownership interest or the power to make personnel decisions. *Murphy v ERA United Realty*, 251 A.D.2d 469, 471 (2d Dept 1998). While the First Department held to the contrary in 2003, before passage of the Restoration Act, *see Priore v N.Y. Yankees*, 307 AD2d 67, 74 (1st Dept 2003), it has subsequently made clear that such restrictive interpretations of the NYCHRL are untenable" (*In the Matter of Commission On Human Rights Ex Rel. Dong C. Joo, Petitioner v Ubm Building Maintenance Inc., Kuang H. Lee, and Jehwan Kim, Respondents*, 2018 WL 6978286, at *5).

Simply stated, *Priore* is no longer good law.[8] And the majority's reliance on *Priore*

---

[8] While none of the majority's cited cases analyze the import of these amendments, whenever courts specifically analyze the impact of the 2005 amendments on individual liability, they find that the as-amended NYCHRL supports individual liability against

and case law from the First Department which the City Council expressly disavowed years ago as wrongly decided (*see* majority op 13-14) is inexplicable.


IV.

The majority once again adopts a narrow interpretation of the NYCHRL to bar individual coworker liability despite the City Council's several admonishments of the judicial branch's counter-textual and ahistoric reading of its legislation. Moreover, the majority disregards the Council's repeated commands that this Court interpret the NYCHRL broadly to achieve its remedial purposes. The Council enacted a law to ensure accountability for all harassers in the workplace—regardless of their status, and regardless of whether their employer is on notice. The majority fails to give meaning to that intent, leaving it again to the Council to correct this Court's mistake.


Order affirmed, with costs. Opinion by Judge Garcia. Chief Judge Wilson and Judges Singas, Cannataro, Troutman and Halligan concur. Judge Rivera dissents in part in an opinion.

Decided April 25, 2024

---

employees (*see e.g. Caravantes v 53rd St. Partners, LLC*, 2012 WL 3631276, at *21 [SD NY Aug. 23, 2012, No. 09 CIV. 7821 RPP]; *Sanderson v Leg Apparel, LLC*, 2023 WL 8039499, at *2 [SD NY Nov. 20, 2023, No. 1:19-CV-8423-GHW]).